## NOVEMBER TERM, 1803.

*The President, Directors and Company of the Union Turnpike Road* v. *Thomas Jenkins.*

*The same* v. *the same, in three other actions.*

* Ch. 118.     BY an act of the 3d of *April,* 1801,* certain persons were incorporated, for the purpose of improving the road from *New-Lebanon* to *Hudson,* under the name of " *The President, Directors, and Company of the Union Turnpike Road.*"

By the second section of the act, it is *ordered,* " that *Robert Jenkins,* and *Elisha Williams* be, and " they are hereby appointed commissioners, to do " and perform the several duties hereafter mention- " ed : that is to say, they shall, on or before the first " day of *May* next, procure two books, and in each " of them enter as follows : *We, whose names are* " *hereunto subscribed, do, for ourselves, and our legal* " *representatives, promise to pay, to the President,* " *Directors, and Company of the Union Turnpike* " *Road, twenty-five dollars, for every share of stock* " *in the said company, set opposite to our respective* " *names, in such manner and proportion as shall be de-* " *termined by the said President, Directors, and* " *Company ;* and every subscriber shall, at the time " of subscribing, pay unto either of the said com- " missioners, the sum of ten dollars, for each share " so subscribed ; and the said commissioners, shall,

" as soon as one thousand shares have been subscrib-
" ed, cause an advertisement to be inserted in the
" public *news-paper*, printed in *Hudson*, giving at
" least ten days notice of the time and place the said
" subscribers shall meet, for the purpose of choos-
" ing five directors, who shall be stock-holders, for
" the purpose of managing the concerns of the said
" *Company*, for one year; and the day of choosing
" the said directors, shall, thereafter, be the anniver-
" sary day of choosing directors ; and the directors
" elected by the votes of the stockholders, shall im-
" mediately proceed to the choice of one of their
" members for *President ;* and the said *President and*
" *Directors* shall and may meet from time to time,
" at such time and place as they may by their bye-
" laws direct, and shall have power to make such
" bye-laws, rules, orders and regulations, not incon-
" sistent with the constitution of this or the *United*
" *States,* as shall be necessary for the well ordering
" of the affairs of the said corporation : PROVIDED,
" that, at the election of the directors, every person
" shall have a number of votes equal to the number
" of shares owned by such person, if such number
" shall not exceed fifty, and one vote for every three
" shares owned by such person exceeding fifty."

By the last section, it is enacted, " That it shall
" be lawful for the said directors, to call for, and de-
" mand, of and from the stockholders respectively,
" all such sums of money by them subscribed, or to
" be subscribed, at such times and in such propor-
" tions, as they shall see fit, under pain of forfeiture
" of their shares, and of all previous payments made

M m

" thereon, to the said *President, Directors and Com-*
" *pany.*"

The defendant had subscribed for 280 shares, but,
at the period of writing his name in the book, as di-
rected by the first section, the 10 dollars therein or-
dained to be, at that time paid, were neither so paid,
nor were demanded. Two orders for paying in 5
dollars on each share subscribed, were made, with
which the defendant refused to comply, and for their
amount the present actions were brought. The first
count in the declaration, stated the passing of the
act, and incorporating the company. It also set
forth the second section, omitting, however, that
part requiring the payment of the 10 dollars on each
share at the time of subscription ; it went on aver-
ring the compliance with the requisites of that sec-
tion, the subscription of the defendant, and of 2,900
shares ; it stated the election of a *President and Di-
rectors,* and two orders made by them for payment of
two instalments, of 5 dollars cash, on each share sub-
scribed, notice, and by reason whereof, &c.

The second count was in these words, " And
" whereas, also, the said *Thomas Jenkins,* on the
" seventh day of *April,* 1801, at the city of *Albany,*
" in the county of *Albany,* made his *certain promisso-*
" *ry note* in writing, by him, in his own proper hand-
" writing subscribed, the date whereof, is on the
" same day and year aforesaid ; whereby the said
" *Thomas,* promised for himself, and *his legal repre-*
" *sentatives,* to pay to the *President, Directors and*
" *Company of the Union Turnpike Road,* the sum of
" 25 dollars for every share of stock set opposite to

" his name, in such manner and proportion, and at
" such time and place, as should be determined by
" the said *President, Directors and Company*, and
" the said *Thomas* did then and there set opposite to
" his name, fifty shares," with an averment of their
determining that he should pay 5 dollars on each, on
the 10th of *September*, then next, with notice, liabili-
ty, and assumption.

The third count was in the same form on a pro-
missory note, for 230 shares.

The causes were tried at the *Albany* circuit, in
*January* last, and general verdicts found for the plain-
tiffs.

After this, the defendant gave notice of moving in
arrest of judgment, and assigned the following rea-
sons :

1st. That the first counts in the declarations in
the said causes, being founded upon the statute, do
not set forth that the said defendant *at the time* of sub-
scribing the said subscription, paid to the said com-
missioners, the 10 dollars on each share, by him sub-
scribed, according to the regulations of the said act,
and that it appears by the said counts, that the com-
missioners therein named, did not, as soon as one
thousand shares were subscribed, in the manner di-
rected by the said act, proceed to give the notice by
the said act required, for the purpose of choosing di-
rectors, and that no order and determination of the
*President, Directors and Company*, in the said decla-
rations mentioned, is stated in the said first counts,

for the payment of any money, upon the shares of stock, therein mentioned to have been subscribed; so that the defendant never became liable to pay any such money, and that the promises in the said first counts stated, are void for want of consideration.

2dly. That the second and third counts, in the declarations in the said causes, are founded on agreements or promises in writing between the parties, as on a note of hand, which is not within the statute, &c. and that the said counts do not set forth any good or valid consideration, upon which the said agreements in writing were made and given.

Immediately after service of notice of the above reasons, in arrest of judgment, on an affidavit stating, that the evidence offered at the trial, was under the first counts in the declarations, and calculated to support them in particular (the second and third counts not being read to the jury, nor referred to by the counsel) the plaintiffs gave notice of a motion, to amend the verdicts in the several suits, from the judge's notes, so as to make them apply only to the first counts in the several declarations, and to enter verdicts on the second and third counts for the defendant, and to amend the *postea* and rules for judgment entered thereon, in conformity to such order as the court might make.

*Champlin*, for the defendant. The first objection is, that the ten dollars, ordered by the act to be paid, was not so done. The contract then, on which the action is founded, is not according to the order of the statute. In the next place, the orders stated by the

declaration to have been made for payment of the sums demanded, are not in pursuance of the law. By that, the order is to be by the *President, Directors and Company ;* the declaration sets forth one, by the *President and Directors* only. This is fatal, for as the plaintiffs have a particular authority, they ought to show a strict literal compliance with the law, by which they are authorised. If they have a right to omit the company in their orders, they may the directors, and so the president alone may govern the affairs of the corporation. The two last counts are plainly bad : they are on promissory notes, under the statute, where those notes appear to depend on a contingency. The declarations, therefore, on them cannot be maintained. *Carlos v. Fancourt,* 5 *D. & E.* 482. For a note on a contingency is not a note within the statute. Not that such a note cannot be declared on, but then it must be as a special agreement, and the consideration set out. As to the notice to amend, it is before the court ; they, perhaps, will not be disposed to allow it. We object, however, that the application is too late, because a term has intervened, and the evidence which was given in one count, would equally apply to all. Yet, if we are wrong in this, if the court should give leave to amend, they will not do it, without ordering at the same time a new trial. *Tomlinson v. Blacksmith,* 7 *D. & E.* 132.*

---

* In that case, the amendment was by altering the verdict from a small to a larger sum ; which amendment was moved for, on the face of the declaration. The court said, in fact we cannot load the defendant with more than the jury of his country has determined, without sending him back to another jury.

Nov. Term,
1803.

*Williams* and *Van Ness*, contra.    The application on the part of the defendant, is to amend the verdict from the notes of the judge, so as to apply the evidence to the first count only, and to enter verdicts for the defendant on the second and third.    It is evident that the testimony could have gone only to the first, for the two last are stated simply as contracts, though the form be somewhat like that on a note of hand.—— They were engagements to an organized company, and it was only in relation to *that* company, that they were taken; they must, therefore, comport with the defendant's liability to that company, under the first count.    When a general verdict is given, it is almost of course to amend, if *that* verdict does not correspond with the judge's notes.    3 *D.* & *E.* 659.*

† *Doug.* 376.
See also,
*Williams* v.
*Breedon,* 1
*Bos. & Pul.*
329.

So in *Eddowes* v. *Hopkins*,† it was ruled, that if the evidence be only on a good or consistent count, and there be others bad in point of law, a general verdict given on the whole declaration, shall be amended according to the judge's notes.    Even in a criminal case it has been done, and the criminal executed according to the amendment.    *Grant* v. *Astle, Doug.* 370.

In slander, it is true, where some counts are for words not actionable, and others for words actionable, on a general verdict, judgment will be arrested, but even then the court will order a *venire de novo* to as-

---

* *Petrie* v. *Harmay.*    There were two issues in that case, the verdict was on one, and no notice taken of the other, the amendment was allowed after error brought, and this assigned as a cause, on payment of costs.

sess damages on the good count. An application like the present is never too late. In 1 *D.* & *E.*\* it is said an amendment will be ordered even after error brought, and the record sent back from the exchequer chamber. The same principle is found in *Taylor* v. *Whitehead, Doug.* 746.† If we are successful on the point of an amendment, all objections taken to the second and third counts are at an end. But even should these be objected to, we contend they are good. The instrument declared on, is an engagement in writing by which the defendant promised to pay. The being a note in writing is enough, and purports a consideration though none be stated. 2 *Black. Comm.* 446. *Pillans* v. *Van Mierop*, 3 *Burr.* 1670.‡

---

\* *Green* v. *Rennet*, 783. per *Buller*, J. But that case does not apply to amendments of verdicts. It relates to amending mistakes by the act of the clerk, where there is something to amend by. As if he enter against an executor, judgment *de bonis propriis*, instead of *de bonis testatoris*.

† The decision referred to, is very different. A verdict had been found for the defendant; a motion for a new trial on account of the verdict's being against evidence had been denied, after which the plaintiff obtained a rule to show cause why he should not be allowed to enter up judgment on that issue, because, notwithstanding the finding of the jury, the point of law was in favour of the defendant. The court said this being a motion in the nature of one for an arrest of judgment, was never too late before judgment entered up.

‡ The two books cited, will certainly warrant the position of the learned counsel, but the parts referred to are not law. In *Sharington* v. *Strotton*, *Plow.* 358. it is said, " By the law of this " land, there are two ways of making contracts, or agreements " for lands and chattels : the one is by words, which is the infe- " rior method ; the other is by writing, which is the superior.

Nov. Term,     KENT, J. That doctrine has been completely
  1803.
——————— overruled in a case where *Skynner*, Baron, delivered
in the House of Lords the unanimous opinion of the
twelve judges.

Caines.    *Amicus curiæ.*    *Rann* v. *Hughes*, 7. *D.*
& *E.* 350.

———————————————————————

" And because words are oftentimes spoken by men unavoidably
" and without deliberation, the law has provided that a contract
" by words shall not bind without consideration.   But where the
" agreement is by deed, there is more time for deliberation ;  for
" which reason they are received as a lien final to the party, and
" are adjudged to bind the party without examining upon what
" cause or consideration they were made."   The reader will ob-
serve, that when *Plowden* speaks of contracts by writing, he
means by deed under seal.   This is more explicitly declared in
the case of *Rann* v. *Hughes*.   *Baron Skynner* there says, " All
" contracts are by the laws of *England* distinguished into agree-
" ments by SPECIALTY, and agreements by PAROL ;  nor is there
" any such third class as some of the counsel have endeavoured
" to maintain, as contracts in writing.   If they are merely WRIT-
" TEN, and not SPECIALTIES, they are PAROL, and a consideration
" must be proved."   In *Pillans* v. *Van Mierop*, WILMOT, J. ar-
gued, that if a stipulation, which was only by words, was, accord-
ing to the civil law, binding without consideration, *a fortiori*,  so
must be an agreement in writing.   But the civil law itself will
not warrant this reasoning.   The obligatory force of a stipula-
tion arose from the words being spoken in a precise form, before
a public officer ;  for, if that form was not adhered to, the stipula-
tion was void : therefore if to the question PROMITITS, the party
stipulating had answered SPONDEO, the stipulation was a nullity.
I am therefore disposed to think, that the stipulation was taken in
the manner of our recognizances, and when acknowledged became
a species of record.   I am peculiarly induced to this opinion, from
the manner in which they are now entered among the acts of the

*Van Ness.* A written contract without considera-
tion may be declared on as it is.

LEWIS, C. J. This court has decided that a con-
tract merely in writing, does not supersede the ne-
cessity of a consideration.

*Williams.* That the contract was not consumma-
ted by payment of the $10 required by the act, is also
urged as a reason why the action cannot be maintain-
ed, but surely the commissioners might have dispens-
ed with this. As to the objection that the promise
was given to pay such sum as the *President, Direc-
tors and Company* should order; and that the order
was only by the *President and Directors*, it can hardly
be thought the defendant ever hoped to rely upon it.
The *President and Directors* are the agents of the
*Company*, duly chosen by them physically and le-
gally to express their will. The order made by the
*President and Directors*, is an order made by the
*Company*. This follows necessarily, for the *President
and Directors* are, by the words of the law, to act for

---

court, in those of the *English* tribunals, which follow the civil
code; and also from considering, that the reduction of a contract
into writing did not, even by the rules of the *Roman* jurispru-
dence, preclude from entering into the consideration on which
it was made. By that system the *obligatio literatum* arising from
the contracts *ex literis*, was invariably contestible in the three
following cases: 1st. When the consideration was not expressed.
2d. Even then within two years. 3d. In all cases of loans of mo-
ney, by the *exceptio de non numerata pecunia*, which threw the
*onus* of proving a consideration upon the plaintiff. The codex,
too, is express that no form of words or writing, but assent alone,
formed the contract. *Cod. lib. 2. tit. 3. l. 17.*

N n

Nov. Term,
1803.
and to manage the concerns of the *Company*: when they 'were chosen the powers of the *Company* were transferred to them, and this being under the letter of the statute, they were the only persons to make the order. Had it been complied with, the defendant would never again have been called upon for any thing paid under it.

*Harison*, in reply. In support of the notice in arrest of judgment, nothing can be more clear, than, that where entire damages are given, and one count is bad, the judgment must be arrested. But in this declaration, there is not one good count, and this is apparent on the face of the record without any aid *ali-unde*. On the first count, the objection, as to the order, is certainly fatal. The act operating like a charter, specifies a particular manner in which the orders of the subscribers are to be made; the bye-laws of the *Company* are not to oppose the laws of this State, or the laws of the Union; and yet, supposing the *Company* to have authorised the *President and Directors* to make orders on the *Stockholders*, that very authority can be supported, only by allowing a violation of the law by which the *Company* itself is incorporated. If one branch of those by whom a specific act is ordered to be done, can be dispensed with, another may, and there is no saying how far this principle is to be carried; no power can be exercised under the statute, but what is created by it, and executed in the manner it prescribes. On the point in consideration, the authority from 5 *D.* & *E.* is decisive: no consideration appears by the declaration; the amendment asked must be denied, because it is evident whatever

went to support the first count, must have been appli-
cable to the second and third counts, which were on
the same note as that mentioned in the first ; if so,
*Eddowes* v. *Hopkins*, relied on by the plaintiffs, shows
the amendment cannot be granted.


*Per Curiam*, delivered by RADCLIFF, J.   In this
case there is a motion in arrest of the judgment,
founded on objections made to all the counts in the
declaration.

The counts are three in number, and the objec-
tions which apply to all are,

1st.  That the promise or contract set forth in the
declaration is void for want of consideration, and con-
nected with this is another objection, which was dis-
tinctly urged, that the first instalment of $10 not be-
ing paid, the contract was incomplete, and not obliga-
tory on the *Company* and therefore also void. . . .

2d.  That the commissioners appointed by the act
did not, as soon as 1,000 shares were subscribed, give
the notice required by the act to choose *Directors*.

3d.  That no order or determination of the *Presi-
dent, Directors and Company* requiring the payment
of the instalment in question, is stated in the declara-
tion to have been made.

To the second and third counts there is a fur-
ther objection, that the plaintiffs have declared on the
promise or subscription in writing, as upon a promis-
sory note within the statute.

As to the first, the form of the subscription which contains the promise, is prescribed by the act in the following terms : "We whose names are hereunto "subscribed, do for ourselves and our legal repre- "sentatives, promise to pay to the *President, Direc-* "*tors and Company of the Union Turnpike Road,* the "sum of 25 dollars for every share or stock in said "*Company,* set opposite to our respective names, in "such manner and proportion, and at such time and "place, as shall be determined by the said *President,* "*Directors and Company.*" The declaration states the plaintiff's subscription in these terms, but does not aver that the 10 dollars on each share were paid, and which the act required the defendant to pay at the time of subscription.

I cannot discover any ground on which this promise ought to be considered as void. The subscription was taken by commissioners who were authorised to receive it, and in the form prescribed by the act. That form contains an absolute promise to pay the money to the *President, Directors and Company.* On the one side the interest of the *Company* in selling the shares, and the public advantage to be derived from the success of the institution, and on the other the expected profits to accrue from the stock, were sufficient considerations to render the promise binding. By force of the act itself it must be considered as good. The legislature also must have intended that it should be obligatory, for else the formal manner in which it was prescribed to be taken would be senseless and nugatory. I cannot imagine that a contract in terms so express and complete should be designed to mean nothing.

The last section of the act by which the *Company* was created, cannot, in my opinion, destroy its effect. It is thereby further enacted, that the *Directors* may call for and demand the sums so subscribed, at such times and in such proportions as they shall see fit, under pain of the forfeiture of the shares and all previous payments. This provision was designed as an additional security for the proportion of the shares which should remain unpaid, and to enable the *Company* by a decisive measure to compel the prompt payments which the objects of the institution required. They had an election to adopt this expedient, and exact the forfeiture, or to enforce payment in the ordinary course by a suit on the original contract. Not having insisted on the forfeiture, they of course have a right to maintain this action.

The objection which is founded on the idea that the contract was not obligatory on the *Company*, and therefore not mutual in its operations, I also think is not well taken. The subscription was for the full sum originally due for each share. The 10 dollars on each share were due immediately, and the engagement with respect to that sum was like a note or obligation payable on demand. The contract was complete and the defendant had a right to tender the payment of the 10 dollars, and demand its performance on the part of the *Company*, who had an equal right to enforce it against him. Neither party could revoke it without mutual consent, or a default on the adverse side. I, therefore, consider the contract as reciprocally binding, and founded on a valid consideration.

The second objection is, that the commissioners appointed by the act did not, as soon as 1,000 shares were subscribed, give notice to the stockholders to choose *Directors.* This was, I think, properly relinquished by one of the defendant's counsel. It does not appear when the precise number of 1,000 shares were subscribed. The defendant subscribed his shares on the 17th of *April*, 1801, and it is averred, that on the 21st of the same month upwards of 1,000 shares, to wit, 1,990 were subscribed, and that the commissioners, on that day, gave notice, to choose *Directors.* The particular time of giving this notice, after 1,000 shares were subscribed, could not be material. The act in this respect was merely directory to the commissioners, and if they did not strictly execute their trust, it could not affect the existence of the *Company*, nor any contracts made with them.

The third objection is, that no order or determination of the *President, Directors* and *Company*, requiring the payment of this instalment, is averred. It is averred that the *President and Directors only*, made the order. The promise was made to the *President, Directors* and *Company*, according to the form prescribed by the act, and it is therefore argued, that this order ought to have been made by the *Company* as well as by the *President* and *Directors.* This criticism ought not to prevail against the only practicable construction that can be given to the mode of executing the powers of this corporation. It is obvious that the *Company*, in their collective capacity, can never act. The *President* and *Directors* are their representatives, and they alone are authorised to man-

age the concerns of the *Company.* The act invests them with this power, and it is thus set forth in the declaration. They alone could require the payment in question, and the order was properly made by them.

The last objection applies to the second and third counts only, in which the plaintiffs have declared on the defendant's subscription as upon a note of hand, without setting forth the act, or any consideration to support the defendant's promise. It is not expressly declared upon as a note within the statute concerning promissory notes, but the counts can be supported on that idea alone, for they do not state any consideration independent of the making of the note. The shares of stock to which the defendant would be entitled, are not set forth as the consideration of the promise, but merely as descriptive of its extent, and as designating the amount he undertook to pay. These counts, therefore, cannot be maintained unless the note be considered to come within the statute, which I think it does not. Although by the note the defendant promised to pay 25 dollars for each share, it depended on the future operations of the *Company,* which was not yet organized, whether the whole or any part of that sum would finally be demanded or become due. The payment was, therefore, uncertain and contingent, and such a note has frequently been held not to come within the statute, and can be declared upon only as a special agreement.

These counts being, therefore, defective, and the verdict general, the judgment ought to be arrested unless the verdict be amended by applying it to the

Nov. Term, 1803.

first count in the declaration. An application for that purpose was made by consent, concurrently with the motion in arrest of judgment. And if the judge before whom the cause was tried will certify that the evidence applied solely to that count, or, as I apprehend the correct rule to be, that all the evidence given would properly apply to that count as well as to the others, I think the amendment ought to be allowed. The practice of amending in such cases is well established, and is consistent with reason and justice to the parties. The result of my opinion, therefore is, that the judgment be arrested unless such amendment be made, and in that case, that the motion be denied.

LEWIS, C. J. These are actions of *assumpsit,* brought by the *President, Directors and Company of the Union Turnpike Road,* against the defendant, *Thomas Jenkins,* on two several subscriptions, amounting to two hundred and eighty shares in the capital stock of said *Company,* for certain payments called for, pursuant to the act of incorporation, by the said *President* and *Directors.*

The declaration contains three counts. The first sets forth the act of incorporation, the formation of the *Company* pursuant thereto, the subscription of the defendant, the call for certain payments of seven dollars on each share, and his refusal to pay, whereby he became liable, &c.

The two remaining counts are on the several subscriptions of the defendant, as on his promissory notes.

A verdict was found generally for the plaintiffs, and the cause is now before us, on a motion in arrest of judgment, on the part of the defendant, and a motion on the part of the plaintiffs, to amend the verdict by the notes of the judge who tried the cause, so as to confine it to the first count in their declaration, on an affidavit, that no evidence was offered on the other counts.

The principal ground of the motion in arrest of judgment is, the alleged want of a consideration to support the promise, without which, it is insisted, the action is not sustainable. On the record no consideration is stated. No loss or gain to either party; and testing the conduct of the commissioners, by the provisions of the act, none is to be found, in my opinion, in the contract itself. The act requires, that to constitute a stockholder, he shall subscribe an engagement in the words following: " We, whose " names are hereunto subscribed, do for ourselves " and our legal representatives, promise to pay to the " *President, Directors and Company of the Union* " *Turnpike Road,* the sum of twenty-five dollars, for " every share of stock in the said *Company,* set op- " posite to our respective names, *in such manner and* " *proportion, and at such time and place, as shall be de-* " *termined by the said President, Directors and Com-* " *pany.*" It also further requires, that every subscriber shall, at the time of subscribing, pay unto either of the commissioners, the sum of ten dollars, for each share so subscribed. The subscription and payment are both essential to the consummation of the contract. These were cotemporaneous acts.

The declaration states the subscription by the defendant merely, without averring any payment or demand of the ten dollars on each share ; and it was admitted on the argument, that, in fact, they were neither demanded nor paid.

I cannot see, then, any consideration for this promise ; and the legislature appear to have been apprized of the inconvenience that might arise from this source, and have provided for it, in some measure, by the last clause in the statute, which gives a power to the *Directors,* " to call for, and demand of " and from the stockholders respectively, all such " sums of money by them subscribed, or to be sub- " scribed, at such times, and in such proportions " as they shall see fit, under pain of forfeiture of " their shares, and of all previous payments made " thereon."

Suppose the speculation had been an advantageous one, and before the first call of the *President* and *Directors,* the stock had risen considerably in value, could not the *Directors,* with propriety, have refused to consider Mr. *Jenkins* as a stockholder, on account of his not having made the payment required by the act on his subscribing ? I think they could. No *positive* benefit then, arising from the future emoluments of the *Company* transactions, can be considered as a consideration for the promise, and if it could, none such is stated on the record.

Notwithstanding the motion to amend, it was insisted the suit was maintainable on the second and third counts. I think not. For a promise to pay on

Nov. Term, 1803.

a contingency, which may or may not happen, cannot be declared on as a note of hand. The instrument must be *payable at all events.*

The propriety of amending, I need not consider, as I am of opinion, no suit can be maintained on the first count for want of a consideration.

I am of opinion judgment ought to be arrested.*

---

* After pronouncing the judgment of the court, RADCLIFF, J. observed, that he thought the regular practice was to obtain the certificate of the judge before whom the cause was tried, that the evidence applied only to the count on which it was meant to enter judgment. KENT, J. who tried the cause, said the affidavit of the plaintiffs' attorney was correct, and therefore he deemed it sufficient for the amendment. In this the bench concurred.