No. 67.—JOHN P. EVANS, plaintiff in error, *vs.* BERRY ROGERS, defendant in error.

Whenever proceedings in court are irregular, application to set them aside should be made in the first instance. If the party after discovering the irregularity proceed himself and take subsequent steps in the cause, or lie by and suffer the other party to do so, the court will not assist him.

A verdict may be amended so as to conform to the declaration, if the error be apparent on the face of it.

The allowance or disallowance of amendments in pleadings are matters within the discretion of the court, and will not be interfered with except in extreme cases.

Neither the act of 1826, 1831, 1839, 1840, nor 1845, passed for the relief of securities and endorsers, give the control of executions to endorsers who have paid off the same against prior endorsers, except such executions as have issued on judgments, founded on bankable instruments.

This cause grew out of an affidavit of illegality.

On the 11th day February, 1841, a judgment was rendered in Bibb Superior Court, at the instance of Uriah J. Bulloch, against Rufus K. Evans as maker, and John P. Evans, the plaintiff in error, and Berry Rogers, defendant in error, as endorsers for the sum of $308 15, principal, besides interest and costs. Berry Rogers, defendant in error, who was the last endorser, was compelled to pay over the full amount of said judgment. It appeared from the record that, afterwards in the

Superior Court of the said county of Bibb, at November Term, 1842, the said Berry Rogers obtained the following order of said court, granting him the control of said judgment as follows, to wit:

| "URIAH J. BULLOCH, | Judgment, Bibb Superior Court, 11th February, 1841. | |
|---|---|---|
| *vs.* | | |
| RUFUS K. EVANS, | Principal,    .     .     .     . | $308 15 |
| JOHN P. EVANS, and | Int. to Judgment,     .     .     . | 26 70 |
| BERRY ROGERS. | Costs,    .     .     .     .     . | 17 50 |

"It appearing to the court that Berry Rogers, the last endorser on the note, the foundation of the above judgment, has been compelled to pay over the full amount of the above judgment, and praying for his remedy against the other endorser, John P. Evans, under the act of the 22d December, 1840, and by testimony produced in court at this term, showing that John P. Evans, though an endorser upon the note on which the above judgment was founded, was the principal debtor at first, it being his own debt; it is therefore ordered, that the said Berry Rogers have the use and control of the above judgment for the whole amount of principal, interest and costs against said John P. Evans, to reimburse himself as security, and that said judgment be enforced in his favor against the other defendant, Rufus K. Evans, for only one-half of the principal, interest and costs due on said judgment." Afterwards, on the 16th day of March, 1846, a *capias ad satisfaciendum* was issued from said judgment at the instance of said Berry Rogers, the same issuing in the name of Uriah J. Bulloch, as plaintiff; and the said Rufus K. Evans, John P. Evans and Berry Rogers, as defendants.

Afterwards on the 9th day of April, 1846, John P. Evans, the plaintiff in error, was arrested under and by virtue of said writ of *capias ad satisfaciendum*, by the sheriff of the said county of Bibb: Whereupon, he made and filed an affidavit of illegality, alleging that the said execution was proceeding against him illegally on the following grounds, to wit:

1st. That if any such judgment appeared on the record of said court, as was mentioned in said *ca. sa.*, the same was not founded on the verdict of a jury, or the confession of the defendants, but was entered up by counsel for plaintiff, of his own voluntary accord, and without authority of law, and was therefore absolutely null and void.

2d. That the jury having rendered against defendants a verdict to this effect or in these words: "*We, the jury, find for the plaintiff three and eight dollars, with interest and cost of suit,* (signed) *Leonard Adams, foreman,*" which has not been appealed from or altered, counsel entered up judgment for the amount first above stated, which was illegal, because the judgment did not follow the verdict of the jury in any particular.

3d. Because, several terms after the rendition of the verdict, plaintiff's counsel moved and obtained an order to correct said verdict; but the effect of which was to make a new verdict, which was grossly illegal and absolutely null and void.

4th. Because said judgment had been paid off and discharged in full by one of the co-defendants, and the *fi. fa.* returned to the office satisfied in full.

5th. Because defendant (plaintiff in error) had once before been ar-

rested on said *ca. sa.* and discharged, which discharged the debt in full, to wit: May Term, 1842, of said court.

6th. Because, again afterwards defendant (the plaintiff in error) was arrested and again discharged.

7th. Because the said Rufus K. Evans was also arrested, and gave bond and security, and no action had been had on said arrest and proceedings.

8th. Because, in February, 1843, the defendant (the plaintiff in error) was arrested at the instance of his co-defendant, Berry Rogers, (the defendant in error,) by virtue of an order, a copy of which was endorsed on the back of said *ca. sa.*, being the order of court hereinbefore recited, which said order was manifestly absurd, and the arrest under it illegal, on the following grounds: The act of 1840 has no reference to the case of endorsers, but refers to co-securities, the act giving a remedy to endorsers not reaching this case; the making of a party to a note the maker of the note, when he was endorser only, violated the contract of the parties, and established a new one in its stead made by the court and not by the parties; and again, the control of the judgment gave to Rogers, (the defendant in error,) the right to enforce the whole principal, interest and costs out of John P. Evans, (the plaintiff in error,) and also one-half more out of Rufus K. Evans, which was absurd.

9th. Because, the court had decided that the above-recited order could have effect only against the property, and not the person, of the endorser, John P. Evans, (the plaintiff in error.)

10th. Because a *ca. sa.* could not issue against the said John P. Evans, in said cause.

It appeared from the record, that the verdict was as stated in the second ground of illegality; but entered on the minutes for *three hundred and eight dollars and fifteen cents*, which was the amount of the note sued on. The record showed a demand of $308 15, without any credits or sets-off.

An order was subsequently taken, correcting the verdict, so as to make it for the above sum.

It appeared, from an entry on the original *fi. fa.*, that Berry Rogers, the defendant in error, and who was last endorser upon said note, had paid off the full amount of the debt, principal, interest and costs, amounting to some $352 00.

It appeared that the plaintiff in error had before been arrested upon a *ca. sa.* issuing from said judgment, and discharged in the court below, at a previous term, on the ground that under the said order giving control to the defendant in error, he could not have execution against the body of the said plaintiff in error.

The affidavit of illegality came on to be heard in the Superior Court of said county of Bibb, before Judge Floyd, at May Term, 1846, when counsel for the defendant in error moved to dismiss the said affidavit of illegality, on the ground that there was no cause of illegality shown in any of the several grounds stated therein, which motion, after argument and consideration of the facts appearing of record in said cause, was sustained by the court below; and the affidavit of illegality by order

thereof was dismissed; to which the counsel for the plaintiff in error excepted.

C. J. McDonald, for the plaintiff in error, insisted:

1st. The judgment did not follow the verdict, and was therefore erroneous and void.

2d. The verdict could not be amended after judgment.—1 *Sellon*, 481.

3d. The act of 1840 gives a remedy to a surety against his co-sureties only, and not against the principal.—*Pamphlet of* 1840, page 173. It gives no remedy to an endorser.

It is the endorser of such note only as is payable at a bank, or deposited in bank for collection, that is entitled, on payment of a judgment by him, to control it against his co-endorsers; and then it can be controlled against the property only and not the person.—*Pamphlet*, 1839, p. 58.

4th. The court has decided that the judgment can be enforced against the property only of the defendant.

5th. The surety obtaining the control of the judgment against his principal, cannot enforce it against his person, but against his property only.—*Frin.* 461, 470; *Pamphlet of* 1839, p. 58.

T. P. Stubbs, for the defendant in error.

Nisbet, Judge, having been of counsel, gave no opinion.

*By the Court*—Lumpkin, Judge.

The court does not feel called on to go at great length into all the questions arising out of this *chaotic record*. A more reprehensible example of vexatious litigation has not come under its review.

As to the want of power in the court to amend the verdict, and the nonconformity of the judgment to the verdict, these objections came too late, after five years' intervening altercations between the parties. In all cases of irregularity in the proceedings in a court the party aggrieved should apply as early as possible; and if he either proceed himself, or lie by and suffer the other party to proceed, the court will not assist him.—*Tidd's Prac.* 435. Lord Kenyon, in the case of *Pearson* vs *Rawlings*, (1 *East*, 77,) declares this to be the universal practice of the court: "That where there has been an irregularity, if the party overlook it and take subsequent steps in the cause, he cannot afterwards revert back to the irregularity and object to it. Justice requires, that this rule should be general in its operation, having in view the advancement of right." And in *De Argent* vs. *Vivant*, (1 *East*, 335,) the court say, "that any irregularity must be taken advantage of in the first instance, and that it is considered as waived by the party, who voluntarily does an act, submitting to the proceeding instead of taking steps immediately, to avail himself of the irregularity, which ought always to be done in the first instance."

We hold, therefore, that it is too late for the defendant, below, to insist that the execution, which he is resisting, is founded on no verdict

Evans vs. Rogers.

or judgment, after he has, for a series of years, been contesting its payment, and joined in sundry collateral issues to arrest its progress.

We are by no means convinced, that the court below had not power to amend the verdict. The ancient rigor of the laws is greatly abated, and the late practice is, to allow great latitude in amending the pleadings.—2 *Str. Rep.* 197; 1 *Cain. Rep.* 381, 583; 15 *Johns. Rep.* 318; 7 *Mass. Rep.* 358; 11 *ib.* 157; *Doug.* 376,746; *Bay's Rep.* 496; 1 *Cow. Rep.* 133.

In the case of the *Bank of Pennsylvania* vs. *Condy,* (1 *Hill Rep.* 209,) the Court of Appeals decided, that a verdict could be amended, so as to conform to the declaration, if the error be apparent on the face of it; and Earle, Justice, in delivering the opinion of the court, says: " It is the constant practice here to amend proceedings, in any period of their progress, to preserve their symmetry, and make them conformable, if anything appear by which the amendment can be framed. Writs, declarations, judgments, and executions, are every day amended, up to the time of final satisfaction. And there can be no reason why a verdict should not be also."—See, also, *Brown* vs. *Hillegas,* 2 *Hill's Rep.* 447.

The court below having ordered the amendment to be made, and the judgment corresponding with the note, as set forth in the record, it is a very grave question, whether it is matter for which a writ of error will lie.—See *Chirae* vs. *Reinicker,* 11 *Wheat.* 280. The Supreme Court of the United States has repeatedly decided, that the allowance or disallowance of amendments is a matter purely of discretion, and that the refusing or granting amendments of pleadings, affords no grounds for a writ of error.—*The United States* vs. *Buford,* 3 *Peter's Rep.* 12. The right to interfere, therefore, must be derived, exclusively, from the statute creating this court. On these grounds, then, in the assignment of errors, we have no difficulty. The material question to be considered is, has Berry Rogers, the last endorser on the note, which is the basis of this case, the right to enforce a *ca. sa.* against the body of John P. Evans, a previous endorser on the same paper, and co-defendant with himself in the action? Having paid off the debt to Uriah J. Bulloch, the plaintiff, he claims to exercise this right by virtue of an order passed in November, 1842, giving him the control of the judgment, to reimburse himself out of the previous parties. That order purports, on the face of it, to be founded on the act of 22d December, 1840, passed for the relief of securities. It is supposed that there is a fatal omission in the statute, which renders it nugatory for any purpose. But waiving that defect, it can never be made to extend to the present case. Its sole object is to enable a *security,* who has discharged an execution, to control it, against his *co-security,* for contribution. But Evans and Rogers are *endorsers* and not *securities.* Besides, Rogers is seeking, under this order, not to collect *one-half* of the demand, out of John P. Evans, as a *co-security,* as being the proportionable part equitably due by him, but to compel him to pay *the whole* as *principal* in this contract. This single view is fatal to the case in its present attitude.

The order under which Rogers claims is most anomalous in its character. It changes the legal liability of all the parties to the instrument, as fixed by its form. It not only converts Rogers into a security, upon

a contract on which he appears as endorser, but makes John P. Evans, the previous *endorser*, the *maker* of the note, and Rufus K. Evans, the *principal*, a *co-security ;* and all this transmutation is wrought, *on motion, in a proceeding at law, and without notice to any of the parties concerned!*

It is urged, however, that this order was granted long anterior to the organization of this court, and, being *res adjudicata*, is beyond its reach. So, too, is the subsequent judgment of the same court which passed it, declaring that the order did not authorize Rogers to sue out a *ca. sa.* against the body of John P. Evans, but that it only gave him the control of the *fi. fa.*, to reimburse himself out of his property. And we know of no statutory right which Rogers had at that time, independent of that order. If the rule of *transit in rem judicatam* is to be applied to the order, it is equally applicable to the interpretation of it, and both are alike obligatory.

The acts of 1826 and 1831 were passed, avowedly, for the protection of *securities* on bond, note, or other contract. And even the *latter* of these statutes, under which this proceeding would fall, if either, (the party not having made special defence on the trial, and shown that he was security only, but coming forward, and obtaining control, after the payment of the execution,) only entitles the security to control the *fi. fa.*, for the purpose of remunerating himself *out of the property* of the principal.

Rogers, then, can invoke no relief from this quarter. The act of 1839, which provides a remedy for endorsers against all prior endorsers, and the makers of promissory notes, and other contracts, is restricted, expressly, to notes, bonds, and other contracts, "*made in the face thereof, payable at any chartered bank, or which shall be negotiated at any chartered bank, or deposited there for collection ;*" consequently, the note, which is the foundation of this *ca. sa.*, is excluded from its provisions. Even if this were a bank-note, the law applies only to persons who should become endorsers *after its passage.* It was approved December 21st, 1839, and the note bears date the 25th October, 1839 ; and as the endorsement of Berry Rogers is without date, it is presumed to be (and so charged in the declaration) cotemporaneous with the execution of the instrument.

As to the act of December, 1845, explanatory of the previous statutes of 1826 and 1831, it is sufficient to say, that it requires the party seeking the control of the judgment, to make it satisfactorily appear to the court that he was security only upon the original contract, which was the foundation of the judgment ; and that, (the order under which this *ca. sa.* was issued was passed three years previously,) whether it be competent for the party, upon suitable notice, to avail himself of its provisions, we avoid expressing any opinion. Like its predecessors, of which it is amendatory, it seems, *ex vi termini*, to contemplate securities proper only. And, notwithstanding their manifest anxiety in this behalf, it would seem that it yet remains for the Legislature to provide a summary remedy for *endorsers* against prior *endorsers*, upon other than bankable paper.

Let the judgment of the court below be reversed.