PISCATAQUA FERRY COMPANY *v.* JONES.

Where a corporation adopts a by-law providing that if any subscriber for stock shall not pay the assessments upon such stock within thirty days after notice of the same, said stock shall be sold at auction, to pay the expenses of the sale and the assessments, and a person subscribes for shares in said corporation, and by the terms of his subscription promises to pay assessments thereon, he will be liable in assumpsit for assessments made upon his stock, before resort is had to a sale of the shares under the by-law.

Any parol representations or agreements made at the time of subscribing for stock in a corporation, and inconsistent with the written terms of subscription, are inadmissible, inoperative and void.

Where an article in the by-laws of a corporation provides that "ten per cent. shall be payable upon subscription, or the subscription shall be void," and a person subscribed for one share of the stock, without paying anything at the time of subscription or afterwards until an assessment was voted upon his share, such subscription is not void, but at most only voidable at the election of the corporation;—and whether voidable by the corporation until after demand made upon the subscriber, and refusal on his part to pay the ten per cent., *quære?*

THIS is an action of assumpsit, brought January 5, 1858, to recover two assessments laid by the plaintiffs upon one share in the capital stock of said company, with interest thereon—one assessment of $17.50, ordered on the 15th of May, 1856, payable on the 1st day of June, 1856, and another assessment of $32.50, ordered September 9, 1856, payable on the 20th of the same month.

By the act of incorporation the plaintiffs were authorized "to establish and maintain a ferry, with horse, steam, or other power, across Piscataqua river," &c., and "the capital stock of said corporation shall not exceed ten thousand dollars, to be divided into shares of fifty dollars each." At the first meeting of the corporation, held on the 13th of October, 1855, and before any subscription for stock was made, it was voted "that the capital stock of the corporation shall be two thousand dollars." It was

also voted that the directors then chosen be authorized to open subscriptions for stock. A code of by-laws was adopted, of which the seventh article is as follows: "If any subscriber shall not pay the assessment upon his stock within thirty days after notice of the same, said stock shall be sold at public auction by the treasurer, upon posting up notice of the same, forty-eight hours before the sale, at two public places in Dover and Portsmouth, and the proceeds shall be applied to pay the expenses of the notices and sale, and the assessments that may be due. Ten per cent. shall be payable upon subscription, or the subscription shall be void."

The following subscription was thereupon obtained:

"PISCATAQUA FERRY COMPANY. The undersigned severally agree to and with the Piscataqua Ferry Company to take the number of shares in the capital stock of said company, fixed at two thousand dollars, set against their names respectively, and to pay to the treasurer thereof the assessments thereon, not exceeding fifty dollars on each share, at such times as the directors may order.

"October 13, 1855."

This was signed by the defendant for one share, and by other persons for thirty-nine shares. At the time the defendant subscribed, and at the time of the subscription of Sherburne Somerby, one of the persons, subscribers as above named, it was represented to them by the person, a member but not an officer of the corporation, who presented the subscription paper, that the purpose of the corporation was to built a horse ferry boat. In fact, a steam ferry boat was afterwards built, and the enterprise proved unfortunate. Neither the defendant nor said Somerby ever paid anything to the plaintiffs, at the time of their subscription or since. Others of the subscribers did not pay anything at the time of the subscription, but have since paid.

At a meeting of the corporation, on the 15th of May, 1856, the foregoing subscription for stock having been presented, the following vote was passed: "*Voted,* That all said subscribers of stock, not heretofore admitted, be now admitted members of this corporation." Five directors were then chosen. A notice to attend said meeting was sent by mail to the defendant, but he did not attend, and neither he nor said Somerby have ever attended any meeting of the corporation.

The directors afterwards, on said 15th day of May, voted that an assessment of thirty-five per cent be laid on all the stock subscribed, allowing as part thereof the ten per cent paid upon subscription, payable on the first day of June, 1856, to the treasurer. On the 9th of September, 1856, the directors voted an assessment of $32.50, to be laid on each share, to be paid on or before the twentieth of the same month, and that the treasurer notify each subscriber thereof by mail, previous thereto; and in case of non-payment of said assessment at said time, that interest be charged thereon. Notice of these assessments was seasonably sent to the defendant, and he was afterwards called on by the treasurer to pay.

It was agreed that such judgment be entered as the court may direct upon the foregoing case, and the questions were transferred to this court.

*Hatch,* for the defendant.

1. The whole amount of the capital stock, fixed by vote of the corporation under the charter, was never subscribed. *N. H. Central Railroad* v. *Johnson,* 30 N. H. 390; *Stoneham Branch Railroad* v. *Gould,* 2 Gray 277.

The capital stock of the company was fixed by its own vote at $2,000. At the same time, and before any subscription was made, the conditions of subscription were fixed, one of which was, that "ten per cent shall be payable on subscription, or the subscription shall be void."

Piscataqua Ferry Company *v.* Jones.

The subscription, according to these terms, has never been filled up. The plaintiffs were not and are not bound to regard the subscription as complete, and the defendant cannot be required to regard those persons as subscribers whom the corporation may at any time reject.

2. The subscription of the defendant is not binding on him. An act, essential to its validity, remains to be done, and until tlte ten per cent is offered and accepted, either party may withdraw from the bargain. Until all the requirements which were to make a valid subscription are complied with, there is no mutuality in the contract. There remains to each the *locus pœnitentiæ.* It is as if the defendant had verbally agreed to take stock, but neglected or refused to make the requisite written subscription; or as if, a seal being required, he had signed without sealing; or as if he had half written his name, and repented before the signature was complete. The defendant could never have compelled the plaintiffs to issue stock to him, consequently there was no consideration for his promise. Ang. & Am. on Corp. 410, 422, 423; *Union Turnpike* v. *Jenkins,* 1 Caines' Ca. 86 (reversing the judgment reported in 1 Caines 381); *Highland Turnpike Co.* v. *McKean,* 11 Johns. 100; *Essex Turnpike Co.* v. *Collins,* 8 Mass. 292; *Cook* v. *Oxley,* 3 T. R. 653; *Small* v. *Herkimer Manufacturing Co.,* 2 Comst. 330.

The cases in which it has been held that, where a charter required a certain per cent to be paid on subscription, the payment is not essential to constitute the subscriber a member of the corporation seem to have turned upon the construction of the peculiar statute; *Troy & Rutland Railroad* v. *Kerr,* 17 Barb. 58; or upon the peculiar position of the subscriber; *Ryder* v. *Alton & Sangamon Railroad,* 13 Ill. 51; or upon some waiver made by the subscriber; *Clark* v. *Navigation Co.,* 10 Watts 364; *Hall* v. *Selma & Tennessee Railroad,* 6 Ala. 771; *McRea* v. *Russell,* 12 Ire. 224; or where the subscription was expressly voidable only, and

not void by reason of the non-payment. *Northern Railroad* v. *Miller*, 10 Barb. S. C. 260.

3. The subscription was not taken by any authorized agent of the corporation, because no person appears to have had authority to take subscriptions except in the form and manner fixed by the by-laws. *Essex Turnpike Co.* v. *Collins*, 8 Mass. 292; *South Bay Meadow Dam* v. *Gray*, 30 Me. 547. And if the agent·who took the subscription was duly authorized, he bound the corporation by his representation of the purpose of the subscription. The defendant is not bound, if that purpose was changed or erroneously stated (*Troy & Rutland Railroad* v. *Kerr*, 17 Barb. 581), and the rule laid down in *George* v. *Harris*, 4 N. H. 533, does not prevent the defendant from showing that Somerby's subscription was, for this reason, void. So ruled by *Bell*, J., in *P. & C. Railroad* v. *Jones*, Rockingham county. The defendant had done nothing to waive his rights or to confirm his subscription. He has attended no meeting of the corporation, and has refused to pay all assessments. The vote of the corporation of May 15, 1856, cannot affect the rights of the defendant. It is not even certain that he or Somerby was intended to be included in it. Their subscription was "void" by the by-laws, and there is nothing in the vote which indicates any intention to waive the by-law.

*Woodman*, for the plaintiffs.

1. The capital stock was properly fixed at $2,000.

2. This amount was duly subscribed by the defendant and others, before any assessments were laid. The defendant's subscription was perfect. *Doe* v. *Bancks*, 4 B. & Ald. 401; *Clark* v. *Jones*, 1 Den. 516; *Roberts* v. *Davy*, 4 B. & Ald. 664; *Malvins* v. *Keernan*, 6 Bing. N. C. 395; *Wight* v. *Shelby Railroad Co.*, 16 B. Mon. 6.

3. The declarations of the member procuring the subscription are inadmissible and immaterial. *George* v. *Harris*, 4 N. H. 533.

4. This action is the proper remedy for the non-payment of assessments. *White Mountains Railroad* v. *Eastman*, 34 N. H. 136; *Franklin Glass Co.* v. *Alexander*, 2 N. H. 380; *N. H. Central Railroad* v. *Johnson*, 30 N. H. 390.

SARGENT, J.* This action is brought upon the following promise: "PISCATAQUA FERRY COMPANY. The undersigned severally agree to and with the Piscataqua Ferry Company to take the number of shares in the capital stock of said company, fixed at two thousand dollars, set against their names respectively, and to pay to the treasurer thereof the assessments thereon, not exceeding fifty dollars on each share, at such times as the directors may order. October 13, 1855," which was signed by the defendant for one share, and by other persons for thirty-nine shares. Article seven of the by-laws, adopted before the defendant became a subscriber, provides that if any subscriber shall not pay the assessments upon his stock within thirty days after notice of the same, said stock shall be sold at auction, &c.

The first question raised is, whether this action is properly brought, or whether the stock should have been first sold to pay the assessments, according to the provision of the by-law. In other words, whether the two are concurrent remedies, in a case like this, or whether the remedy provided by the by-law is the only one, to which the plaintiff is confined in the first instance. This by-law cannot, of course, have any greater or more controlling effect than a provision of the same kind would have if incorporated into and made a part of the charter; and it has been settled, after full discussion and extended examination of the authorities, in *N. H. Central Railroad* v. *Johnson*, 30 N. H. 402, that where there was a provision in the charter similar to this by-law, and where there was, also, as in this case, an express promise to pay assessments,

*DOE, J., having been of counsel, did not sit.

assumpsit might be maintained. See authorities cited in this case, and also *Franklin Glass Co.* v. *Alexander*, 2 N. H. 380; *White Mountains Railroad* v. *Eastman*, 34 N. H. 137; Ang. & Am. on Corp., sec. 549, and cases cited. ·

Another question raised is, whether the representation made at the time the defendant and Somerby subscribed for stock, by the person who had the paper, was competent evidence to be considered, and if so, was it material? Did it or could it affect the case? We think it was not competent, and would not have been so, even if the person making it had been the agent of the company. It was only a verbal statement, and does not come within the rule stated in *White Mountains Railroad* v. *Eastman*, 34 N. H. 124, where it was held that a contract, *in writing*, given back to a subscriber for stock, at the same time of the subscription, by an agent of the company authorized to contract, providing that the terms of the subscription might be modified in a certain way, might be valid as part of the original contract of subscription, as between the parties, provided it did not operate as a fraud upon others. But this case is more like *George* v. *Harris*, 4 N. H. 533, where it was held that where a promise is direct, positive, unconditional, and in writing, parol evidence is inadmissible to contradict or vary such contract. And the farther reason then stated also applies here, that the defendant's putting upon paper an unconditional promise to pay, may have induced others not only to subscribe but to pay, and his attempts now to shield himself by this private understanding may be a fraud upon others, who have thus been induced to subscribe and to pay. Parol agreements, made at the time of subscribing for stock, and inconsistent with the written terms of subscription, are inadmissible, inoperative and void. *Conn. & Pass. River Railroad* v. *Bailey*, 24 Vt. 465.

But this evidence, upon the case stated, would hardly be material if it were not incompetent. It no where

appears but that the intention was, on the part of a majority, or even all the stockholders, at the time the defendant subscribed for stock, to build a horse ferry boat, and that the representations thus made to the defendant were not entirely true. There is no evidence tending to show that such was not the fact. The case merely finds that afterwards a steam ferry boat was built. The stockholders, after October 13, 1855, and before May 15, 1856, may have changed, and probably did change their minds and purposes. Perhaps this change of purpose was made at the meeting of May 15, 1856, when, if the defendant had attended, he might have prevented such action. But any stockholder to any corporation subscribes, of course, knowing the liability of the majority to change their minds, and of the liability to a change of purpose, at any time, by vote of a majority; and he cannot complain of any change of views or of purpose, provided the company keep themselves within the limits and restrictions of the charter, as they clearly did in this case.

The amount of stock is limited by the charter, so as not to exceed $10,000, and the amount of the shares is also limited to $50. No objection is suggested to the vote of the company limiting their stock to $2,000, and this vote would seem to be unobjectionable.

The principal remaining question is, whether the subscription of the defendant was void, and could not be enforced on account of his not paying ten per cent upon it when he subscribed. If the defendant's and Somerby's subscriptions were valid and binding upon them, then the company might well make the assessments and collect them. The provision of the by-law was as follows: " Ten per cent shall be payable upon subscription, or the subscription shall be void." The defendant's argument has proceeded upon the ground that this provision of the by-law is to have the same force and effect as though the provision had been contained in the act of incorporation of

the company, and also as though the provision had been that the ten per cent should be *paid* at the time of subscription, instead of being that it should then be *payable.* With these changes in the facts, this case would present one of the questions raised in *Union Turnpike Co.* v. *Jenkins*, 1 Caines 381, though there were various other questions raised in that case not presented in the case at bar. That case was decided in the Supreme Court of New-York in favor of the plaintiff, that court holding that the subscription was not absolutely void in consequence of the non-payment of the ten per cent at the time of subscription, but only voidable, at the election of the company. This decision was afterwards reversed in the Court of Errors in that State. 1 Caines' Cases 86. The laws of the State of New-York made the decision of the Court of Errors binding as an authority in that State, although the courts even there have been disposed to question somewhat the correctness of the decision. Indeed, it is difficult, and perhaps impossible, to ascertain the precise point upon which the Court of Errors reversed the former decision. The court may have held in that case, as they did in *Hibernia Turnpike Co.* v. *Henderson*, 8 Serg. & R. 219, that it was the intent of the law that no subscription should be received without a previous payment of five dollars a share, and considered that a contract could not be enforced in a court of justice which was made in violation of an act of the legislature. If this were so, then it would make a material difference in the case before us that the provision is contained in a by-law of the corporation rather than in an act of the legislature in the charter. One question raised in *Turnpike* v. *Jenkins* was, as to the want of consideration for the subscription; and as the defendant seems to rely upon this decision in the Court of Errors, we will examine a little farther, and see how this decision has been considered by the courts of New-York and some other States. In the *Goshen & Minisink Turn-*

*pike Road* v. *Hurtin*, 9 Johns. 217, the question was as to whether an action would lie at all upon a promise by a turnpike stockholder to pay his instalments, and whether the remedy given by statute to exact the penalty of the forfeiture of the shares, &c., was not the only remedy. It is there said that the decision of the Court of Errors in *Turnpike* v. *Jenkins* would seem to favor the latter doctrine, but the court conclude that it was not decided upon that point, and then add: "In that case the condition upon which Jenkins was to become a member of the company, by paying ten dollars, had not been performed, and the corporation was understood not to be *in esse* at the time of the making of the promise by Jenkins. It is to be presumed that the judgment of reversal went upon that ground, and that was the ground taken by the Chancellor, who was then the principal law-member of that court."

In *Highland Turnpike* v. *McKean*, 11 Johns. 98, the question was raised as to the validity of the subscription, on account of the non-payment of the sum required by the charter to be paid at the time of subscription; and it was decided in a way to follow what the court supposed to be the decision in *Jenkins* v. *The Union Turnpike*, in the Court of Errors. But the court say: "It is a little difficult to ascertain the point upon which the Court of Errors grounded their decision. One of the questions before them was the one raised in the argument of the present motion. And this court, in the case of the *Goshen Turnpike Co.* v. *Hurtin*, seemed to suppose that to have been the point upon which the Court of Errors intended to decide."

From these remarks we infer that though the courts of New-York felt themselves bound by the decision of the Court of Errors, yet that they did not consider the decision either as very intelligible or very satisfactory. And our impression is, from such examination of authorities as we

have been able to make, that in other States the courts have been disposed to rely quite as much upon the original opinion of the Supreme Court as upon that of the Court of Errors which reversed it.

In Kentucky, in *Wight* v. *Shelby Railroad Co.*, 16 B. Mon. 4, it is held that the failure of a subscriber for railway stock to pay the amount required by the charter to be paid at the time of subscription, does not exonerate him from his liability for his subscription. It was his duty to pay it, and he will not be allowed to take advantage of his own wrong.

In *Vermont Central Railroad* v. *Clayes*, 21 Vt. 30, the court allude to the decision of the case of *Union Turnpike Co.* v. *Jenkins*, by the Supreme Court of New-York, as having decided that the non-payment of the ten dollars per share by Jenkins, when he subscribed for the stock, did not invalidate the subscription as to him, even though the company might have avoided the contract on that ground, had they chosen to do so. The court then say, "though the Court of Errors reversed that decision, it may well be questioned which is the better opinion."

In case of a lease of real estate for life or for years, when there is a condition that upon the neglect of the tenant to pay rent, or for any other default or misconduct on his part, the lease shall "cease and determine," or shall become null and void, or shall become utterly void and of no effect, or shall be and become void to all intents and purposes, in all these cases it has been held that the lease is not absolutely void as to the lessor, but only voidable. It may be void as to the estate and interest of the lessee, who has done the wrong, or who has failed to do all that was required of him, at the election of the lessor, but as to the lessor it is only voidable. *Doe* v. *Bancks*, 4 B. & Ald. 401; *Arnsby* v. *Woodward*, 6 B. & Cr. 519; *Roberts* v. *Davy*, 4 B. & A. 664; *Clark* v. *Jones*, 1 Den. 516.

The lessor may dispense with the forfeiture and con-

firm the continuance of the lease. Courts in these cases merely apply the principle of the common law, that a party shall not be allowed to take advantage of his own wrong; and they will not ordinarily construe contracts in such a way as to allow either party to terminate them at pleasure, by his own improper act, or by any neglect to perform his duty. In *State* v. *Richmond*, 26 N. H. 232, it is said that any man may release or waive a right created for his benefit; and the rendering of the term *void* is fully discussed, and the distinction noted between those cases or contracts where it is to be understood to mean absolutely void, and those in which it is to be understood as voidable only. And if it became necessary to decide this precise point in this case, it may be a question whether the court would not find it more consistent with the weight of modern authorities upon that subject; more in accordance with the principles applied in other analogous cases, and more especially in accordance with the general tenor of our own decisions, to hold that the word void in this connection must be understood to mean voidable merely, at the option of the plaintiffs: void as against the party whose duty it was to make the payment at the time of the subscription, and who was thus the party in the wrong, if the company so elect; or the company might dispense with the condition which it would seem had been inserted for their benefit, and might affirm and ratify the continuance of the contract.

But there is a wide distinction between the contract or provision in the case before us and the one we have been considering, aside from the fact that in the one case the provision is inserted in the charter by the legislature, and in the other it is a provision adopted by the company in the shape of a by-law. In the case before us the provision is that "ten per cent shall be *payable* upon subscription, or the subscription shall be void." The provision is not that the ten per cent shall be actually paid, but shall be

payable.   The company were not obliged to wait until assessments were ordered, but might call at the time of subscription or at any time afterwards, and before any assessments were made, and before the company could legally make any; and this was probably the design in order to furnish the company with the means to defray the necessary expenses incurred in getting up the subscription and organizing the company.   This amount of ten per cent was payable at the time of subscription, and so at any time afterwards when called for or demanded.   It was a provision of which the company might avail itself at any time, upon demand; and if the defendant had been called upon at the time of the subscription, or afterwards, before the first assessment, and had failed to pay, then the question might arise whether the subscription was void absolutely, or voidable only at the election of the plaintiffs; but, no demand having been made, that question has not arisen to be decided.   Had the defendant, at the time of subscription, supposed that it was to be a profitable investment, he could very easily have paid his ten per cent at the time he subscribed, and thus have secured his right to the stock; and if, before any demand, before the company had called for any part of it, he had paid or tendered the ten per cent, though not at the time of subscription, it may well be questioned whether he could not have so done, and thereby secured his right to the stock.   If they had received his ten per cent when thus offered, he would, of course, have been entitled to his stock; and if, after demand, and refusal of the defendant to pay, he had then changed his mind and offered them this amount, and they had received it, they would be held to have waived their right to avoid the contract for such non-payment upon demand.

It is putting no forced construction upon this contract to hold that the intention was, not that each subscriber, by the terms of his subscription and of this by-law, was

obliged actually to pay his ten per cent, but that this amount should, upon subscription, and as a condition precedent and a part of the contract of subscription, become due and payable at any time when the company should call. In such case the company would lose no rights by delaying to make a demand for what they were clearly entitled to, by the terms of the subscription and by-laws, at any time when they chose to demand it. It would seem that the plaintiffs did not need this ten per cent, and did not call for it, in several instances, until the assessments were made, and the defendant could not object that he was not called upon so soon as he might have been to pay what the company had a right to demand at any time.

In *Northern Railroad* v. *Miller*, 10 Barb. S. C. 260, the subscription was to be voidable upon the non-payment of the required per cent, and it was held that the payment was not essential to the subscriber's becoming a member of the company. So here, the requirement is not that the ten per cent should be actually paid, but only that it should thereupon become payable; that it is due and liable to be called for at any time—payable on demand, whenever needed by the plaintiffs; that no subscription should be received upon any other terms, or in other words; and that any subscription that should be made, or attempted to be made, upon any other grounds or conditions, should be void. In this view, the subscription was filled up properly before any assessments were laid upon the members. No demand having been made by the company for the ten per cent, and there having been no intention or wish on the part of the company at any time to avoid the defendant's subscription, if they could have done so; but they, on the other hand, having voted at the earliest opportunity that all persons who had signed the subscription, which was then presented for their consideration, signed by the defendant and others, should be admitted as members of said corporation, thus making it a matter alto-

gether immaterial who obtained the subscribers' names, whether a director of the company or otherwise; the company seemed to act in perfect good faith towards the defendant, and if the defendant had intended to avoid his subscription upon any grounds, if he could do so, it would seem to have been no more than common fairness that he should have given the company some notice to that effect, prior to the time when the company met and organized, and voted assessments upon its members. So that it would hardly seem that the defendant has any equitable ground, much less any legal one, upon which he can claim to be excused from the payment of these assessments.

According to the agreement of the parties, therefore, there must be judgment for the plaintiffs for the amount of the assessments, with interest from the time when they became due.

*Judgment for the plaintiffs.*